## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------x
In re:                                        :
                                              :    Chapter 11
ONE AVIATION CORPORATION, et al.,¹            :
                                              :    Case No. 18-12309 (CSS)
            Debtors.                          :
                                              :    Ref. Docket Nos. 969, 975
---------------------------------------------------------x
```

## ORDER (I) APPROVING PURCHASE AGREEMENT, (II) AUTHORIZING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")² of the above-captioned Debtors and Debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 3007, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order (this "Sale Order") authorizing and approving (i) the Sale pursuant to that certain Asset Purchase Agreement, dated as of October 20, 2020, attached hereto as **Exhibit 1** (including all exhibits and schedules related thereto) between the

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' tax identification number, as applicable, are: ONE Aviation Corporation (9649); ACC Manufacturing, Inc. (1364); Aircraft Design Company (1364); Brigadoon Aircraft Maintenance, LLC (9000); DR Management, LLC (8703); Eclipse Aerospace, Inc. (9000); Innovatus Holding Company (9129); Kestrel Aircraft Company, Inc. (2053); Kestrel Brunswick Corporation (6741); Kestrel Manufacturing, LLC (1810); Kestrel Tooling Company (9439); and OAC Management, Inc. (9986). The Debtors' corporate headquarters is located at 3520 Spirit Drive SE, Albuquerque, NM 87106.

² Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion or the Purchase Agreement (defined herein), as applicable; provided, however, that nothing in the Purchase Agreement (defined below) or this Order shall be construed to include in the definition of Purchased Assets any assets owned by Kestrel Brunswick Corporation or Kestrel Manufacturing LLC on which any Kestrel Secured Creditor (defined below) has a security interest and previously obtained relief from the automatic stay.

Debtors and the Buyer (as may be amended, modified, or supplemented in accordance with the terms thereof, the "Purchase Agreement"), (ii) authorizing, at Closing, the sale of the Purchased Assets and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Buyer at Closing pursuant to this Sale Order and the Purchase Agreement (collectively, the "Assigned Contracts") free and clear of all liens, claims, encumbrances, and other interests, other than any Permitted Encumbrances as set forth in the Purchase Agreement; and (iii) granting related relief; and the Debtors having determined that the highest or otherwise best offer for the Purchased Assets was made by the Buyer pursuant to the Purchase Agreement; and the Court having conducted a hearing on November 6, 2020 (the "Sale Hearing"), at which time all parties in interest were offered an opportunity to be heard with respect to the Sale, to consider the approval of the Sale pursuant to the terms and conditions of the Purchase Agreement, and the Court having considered (i) the Motion and any objections thereto, (ii) the Sale, (iii) the arguments of counsel made, and evidence adduced, related thereto, and (iv) the full record in the Chapter 11 Cases, including the record related to the Sale Hearing; and all parties in interest having been heard, or having had the opportunity to be heard regarding the Motion, the Purchase Agreement, approval of the Sale and the transactions contemplated by the Purchase Agreement and all relief set forth herein; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled on the merits; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their

respective estates and creditors, and other parties in interest in these Chapter 11 Cases; it is hereby

**FOUND, CONCLUDED, AND DETERMINED THAT**:[3]

      A.   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014.

      B.   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      C.   The Court has jurisdiction to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue over these Chapter 11 Cases and the Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Court may enter a final order with respect to the Motion, the Sale, the transactions contemplated thereby, and all related relief, in each case, consistent with Article III of the United States Constitution.

      D.   This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein.

---

3   All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

E.  The Purchased Assets constitute property of the Debtors' bankruptcy estates and title thereto is vested in the Debtors' bankruptcy estates within the meaning of section 541(a) of the Bankruptcy Code.

F.  The statutory bases for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 3007, 6004, 6006, 9007, 9014, and Local Rule 6004-1.

G.  On October 9, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to maintain their business and manage their property as Debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

H.  Given that the Debtors' assets have been extensively marketed since 2018, multiple potential buyers have failed to perform or otherwise consummate transactions for the Debtors' assets, and that parties in interest were recently noticed of a potential sale of substantially all of the Debtors' assets (the "August 2020 Transaction"), upon the Debtors' motion, this Court entered the *Order Shortening the Time For Notice of The Hearing to Consider the Debtors' Sale Motion* [Docket No. 975] (the "Scheduling Order") on October 21, 2020 having determined that sufficient cause existed to shorten the notice period in connection with the Sale Motion. Accordingly, as evidenced by the affidavits of service and publication that were filed with the Court in connection with the August 2020 Transaction [Docket Nos. 922, 923, 932], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, and the assumption and assignment of the Assigned Contracts to the Buyer at Closing pursuant to this Sale Order and the Purchase Agreement has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy

Code and Bankruptcy Rules 2002, 6004, 9007, and 9014, and to each party entitled to such notice, including, as applicable: (a) the U.S. Trustee; (b) the DIP Lender; (c) the Debtors' prepetition lenders; (d) the Committee; (e) the Internal Revenue Service; (f) the United States Attorney for the District of Delaware; (g) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested herein; (h) any party known or reasonably believed to have asserted any lien, claim or encumbrance or other interest in the Debtors' assets; (i) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Debtors' assets; (j) the non-Debtor counterparties to the Assigned Contracts; and (k) any parties that have requested notice in these cases pursuant to Bankruptcy Rule 2002. With respect to entities whose identities are not reasonably ascertained by the Debtors, publication in connection with the August 2020 Transaction, as evidenced by the affidavit of service filed by the Debtors at Docket Nos. 922 and 923, was and is deemed, sufficient, and reasonably calculated under the circumstances to reach such entities. The notices described above were sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale, and the Sale Hearing is, or shall be, required.

I.      The Debtors have served notices [Docket No. 982] (the "Assumption and Assignment Notices") upon the counterparties to the Assigned Contracts ("Non-Debtor Counterparties"): (i) that the Debtors seek to assume and assign to the Buyer the Assigned Contracts on the closing of the Sale (the "Closing Date"); and (ii) of the relevant cure amounts as stated in the Assumption and Assignment Notice or as otherwise agreed by the Buyer and the applicable Non-Debtor Counterparty, (each, a "Cure Amount" and collectively, the "Cure Amounts"). The service of such notices was good, proper, timely, reasonable, adequate, sufficient, and appropriate under the circumstances, and no other or further notice need be given in respect

of establishing a Cure Amount for the Assigned Contracts. Each of the Non-Debtor Counterparties has had a reasonable opportunity to object to the Cure Amounts set forth in the applicable Assumption and Assignment Notice to the Buyer of the applicable Assigned Contract.

J.    Subsequent to the filing of the Motion, the Debtors received certain other indications of interest and potential offers for the Debtors' assets. As a result, the Debtors intended to conduct an auction (the "Auction"), as governed by bidding procedures [Docket No. 1024, as revised Docket No. 1040] (the "Bidding Procedures"), by video conference on November 16, 2020, to determine the highest or otherwise best offer with respect to the Debtors' assets [Docket Nos. 1023, 1026, 1031, 1032, and 1042]. Despite adjourning the Auction multiple times to provide an opportunity for bidders to submit Qualified Bids (as defined in the Bidding Procedures), no Qualified Bid for the Purchased Assets, other than the Purchase Agreement, was received and the Debtors filed a notice [Docket No. 1049] that the Auction was cancelled in accordance with the Bidding Procedures.

K.    The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion as it pertains to the Sale and as provided for herein.

L.    The Sale Notice provided all interested parties with timely and proper notice of the Sale and the Sale Hearing.

M.    The disclosures made by the Debtors in the Motion, the Sale Notice, and related documents filed with the Court concerning the Purchase Agreement, the Sale, and the Sale Hearing were complete and adequate.

N.    A reasonable opportunity to object and to appear and be heard with respect to the Sale, the Motion, and the relief requested therein, including but not limited to the assumption

and assignment of the Assigned Contracts and the Cure Amounts related thereto, has been afforded to all interested parties, including the Notice Parties.

O.   The deadline to file an objection to the Assumption and Assignment Notice and the deadline to file an objection to the Sale have expired. To the extent that any Non-Debtor Counterparty timely filed an Objection to an Assumption and Assignment Notice or an Objection to the Sale that has not been resolved, withdrawn, overruled, or adjourned to a later hearing by agreement of the parties, the Buyer and any applicable Non-Debtor Counterparty are authorized to mutually agree upon a resolution of any pending disputes that does not impose any liability on, or otherwise adversely affect, the Debtors without any further notice to or action, order or approval of the Bankruptcy Court. To the extent that any such Non-Debtor Counterparty did not timely file an Objection to an Assumption and Assignment Notice or an Objection to the Sale, such party shall be deemed to have consented to (i) the assumption and assignment of the Assigned Contract to the Buyer, and (ii) the proposed Cure Amount set forth on the Assumption and Assignment Notice.

P.   The terms contained in the Purchase Agreement constitute the highest or otherwise best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' bankruptcy estates for the Purchased Assets than would be provided by any other available alternative.  The Debtors' determination that the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

Q.   The Purchase Agreement and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Purchased Assets.  No higher or otherwise better offer was

submitted to the Debtors to purchase the Purchased Assets for greater economic value to the Debtors' bankruptcy estates than provided by the Buyer pursuant to the Purchase Agreement.

R.    Approval of the Motion and the Purchase Agreement and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their respective bankruptcy estates and creditors and other parties in interest in these Chapter 11 Cases.

S.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Purchased Assets because, among other reasons, (i) the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets, (ii) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets, and (iii) any other transaction would not have yielded as favorable an economic result. The Buyer is purchasing the Purchased Assets in good faith, is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is not an "insider" (as defined under section 101(31) of the Bankruptcy Code) of the Debtors, and therefore is entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Sale in that: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (iii) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) the Buyer agreed to provisions in the Purchase Agreement that would enable the Debtors to accept a higher or better offer in respect of the Sale; and (v) the negotiation and execution of the Purchase Agreement, including the Sale contemplated thereby, were at arms' length and in good faith. The Buyer has at all times acted in good faith and will continue to be

acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase Agreement.

T.   The Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  The Debtors, the Buyer and their respective agents, representatives and affiliates have not engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

U.   The consideration provided by the Buyer pursuant to the Purchase Agreement: (i) is fair and adequate, and constitutes reasonably equivalent value and fair consideration and value, under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act); and (ii) will provide a greater recovery for the Debtors' bankruptcy estates and creditors than would be provided by any other reasonably practicable available alternative.

V.   By consummating the Sale, the Buyer is not a mere continuation of the Debtors or their respective bankruptcy estates, and there is no continuity, no common identity, and no continuity of enterprise between the Debtors and the Buyer.  The Buyer is not holding itself out to the public as a continuation of the Debtors.  The Buyer is not a successor to the Debtors or their respective bankruptcy estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtors.  Neither the Buyer nor any of its agents, representatives or affiliates shall assume or in any way be responsible for any obligation or liability of the Debtors and their respective bankruptcy estates except as expressly provided in this Sale Order or the Purchase Agreement.  None of the transactions

contemplated by the Purchase Agreement, including, without limitation, the Sale or the assumption and assignment of any Assigned Contracts, is being undertaken for the purpose of hindering, delaying, or defrauding any creditors under the Bankruptcy Code, under the laws of the United States, or under the laws of any state, territory, possession, or the District of Columbia. Neither the Debtors nor the Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims or similar claims.

W. The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a plan of reorganization of the Debtors. The Sale does not constitute a *sub rosa* plan.

X. The Debtors, acting by and through their agents, representatives, and officers, have (i) full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, and (ii) taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the Sale, execute the Purchase Agreement, or consummate the transactions contemplated thereby.

Y. The transfer of each of the Purchased Assets to the Buyer will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Buyer with all right, title, and interest to the Purchased Assets free and clear of all Encumbrances (as defined below).

Z.   Not transferring the Purchased Assets free and clear of all Encumbrances (other than Assumed Liabilities) of any kind or nature whatsoever, including rights or claims based on any theory of successor liability, and/or any applicable state, federal, or foreign law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Encumbrances (other than Assumed Liabilities) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

AA.   The Debtors may sell the Purchased Assets free and clear of all Encumbrances against the Debtors, their respective bankruptcy estates, or any of the Purchased Assets because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances against the Debtors, their respective bankruptcy estates, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Debtors, their respective bankruptcy estates, or any of the Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an Encumbrance, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Sale, subject to any claims and defenses that the Debtors and their respective bankruptcy estates may possess with respect thereto.  All other holders of Encumbrances could be compelled in a legal or equitable proceeding to accept money satisfaction of such claim or interest, or otherwise fall within section 363(f) of the Bankruptcy Code.

BB.    If the Sale were not free and clear of all Encumbrances, or if the Buyer would, or in the future could, be liable for any Encumbrances, the Buyer would not have entered into the Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors, their respective bankruptcy estates and creditors.

CC.    The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to the Buyer pursuant to the terms of this Sale Order and the Purchase Agreement, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their respective bankruptcy estates and creditors and other parties in interest.  The Assigned Contracts being assigned to the Buyer under the Purchase Agreement are an integral part of the Purchase Agreement and the Sale, and accordingly such assumptions and assignments are reasonable and enhance the value of the Debtors' bankruptcy estates.  Any Non-Debtor Counterparty to any Assigned Contract that has not actually filed with the Court an objection to such assumption as of the date hereof is deemed to have consented to such assumption and assignment.

DD.    The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assigned Contracts to the extent provided under this Sale Order and the Purchase Agreement and have:  (i) cured any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the

Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has provided adequate assurance of future performance with respect to the Assigned Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.

EE. Except as expressly assumed by the Buyer under the Purchase Agreement, the transfer of the Purchased Assets to the Buyer and the assignment to the Buyer of the Assigned Contracts will not subject the Buyer to any liability whatsoever which may become due or owing under the Assigned Contracts prior to the Closing Date (other than Cure Amounts), or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any theory of successor liability, in accordance with Section 8.8 of the Purchase Agreement.

FF.    The Purchase Agreement and Sale must be approved and the Closing must occur promptly to preserve the value of the Purchased Assets and the Debtors' respective bankruptcy estates.

GG.    Given the adequacy and fair value of the consideration provided by the Buyer under the Purchase Agreement, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their respective bankruptcy estates and creditors and other parties in interest in these Chapter 11 Cases, and should be approved.

HH.    The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a),

363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the Sale.

II.    To maximize the value of the Purchased Assets, it is essential that the Sale occur within the time constraints set forth in the Purchase Agreement.   Time is of the essence in consummating the Sale. Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved. Accordingly, cause exists to waive the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), 6004(h), and 6006(d) to permit the immediate effectiveness of this Sale Order.

**<u>NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:</u>**

1.    The relief requested in the Motion is granted as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

2.    All objections to, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Purchase Agreement, all other Ancillary Documents, the Sale, the entry of this Sale Order, or the relief granted herein, including, without limitation, any objections to Cure Amounts or relating to the cure of any defaults under any of the Assigned Contracts or to the assumption and assignment of any of the Assigned Contracts to the Buyer by the Debtors, that have not been withdrawn, waived, adjourned or settled by announcement to this Court during the Sale Hearing or by stipulation filed with this Court or otherwise been resolved pursuant to the terms thereof, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion or the entry of this Sale Order are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

3.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

### Approval of the Sale of the Purchased Assets

4.     The Purchase Agreement, including all other Ancillary Documents, and all of the terms and conditions thereof, and the Sale of the Purchased Assets to the Buyer as provided in the Purchase Agreement, are hereby approved.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their agents, representatives and officers, are authorized and empowered to take any and all actions necessary or appropriate to:  (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the Purchase Agreement; (b) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the Purchase Agreement; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the Purchase Agreement and the Sale, including any other Ancillary Documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by this Sale Order, the Purchase Agreement and any such other Ancillary Documents.

6.     This Sale Order shall be binding in all respects upon the Debtors, their respective  bankruptcy estates, and creditors, all holders of equity interests in the Debtors, all holders of any Encumbrances against the Debtors, any holders of Encumbrances against or on all

or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired

lease of the Debtors, the Buyer and all agents, representatives, affiliates, and permitted successors

and assigns of the Buyer, and any trustees, examiners, or other fiduciary under any section of the

Bankruptcy Code, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion

to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases, or other plan fiduciaries, plan

administrators, liquidating trustees, or other estate representatives appointed or elected in these

Chapter 11 Cases.  The terms and provisions of the Purchase Agreement and this Sale Order shall

inure to the benefit of the Debtors, their respective bankruptcy estates and creditors, the Buyer and

all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any

other affected third parties, including all persons asserting any Encumbrances in the Purchased

Assets to be sold to the Buyer pursuant to the Purchase Agreement, notwithstanding any

subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any

chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms

and provisions likewise shall be binding.

### Sale and Transfer of Purchased Assets

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the

Bankruptcy Code, upon the Closing Date and pursuant to the Purchase Agreement, the Purchased

Assets shall be transferred to the Buyer free and clear of all encumbrances, claims, interests, and

liens accruing, arising or relating thereto any time prior to the Closing Date, including the Excluded

Liabilities, mortgages, restrictions, hypothecations, charges, indentures, loan agreements,

instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security

interests, other interests, conditional sale or other title retention agreements, pledges, and other

liens (including mechanics', materialman's, and other consensual and non-consensual liens and

statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts,

rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act of 1974, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities or liabilities under any collective bargaining agreement or labor practice agreement, of the Debtors or any of the Debtors' predecessors or affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities) (collectively, the "Encumbrances"), with all such Encumbrances to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their respective bankruptcy estates may possess with respect thereto.  For the avoidance of doubt, the Purchased Assets shall include that certain fiber optical system owned by the Debtors located in the vicinity of Albuquerque International Sunport, together with all conduit, infrastructure, cable, easements, rights of way, and all other physical aspects and rights associated with the fiber optical system.

8.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Buyer pursuant to the terms set forth in this Sale Order and the Purchase Agreement. For the avoidance of doubt, the Excluded Assets set forth in the Purchase Agreement are not included in the Purchased Assets, and the Excluded Liabilities set forth in the Purchase Agreement are not Assumed Liabilities.

9.      Subject to the terms and conditions of this Sale Order, the transfer of the Purchased Assets to the Buyer pursuant to the Purchase Agreement and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in this Sale Order and the Purchase Agreement, constitute a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Buyer with right, title, and interest in and to the Purchased Assets as set forth in this Sale Order and the Purchase Agreement, as applicable, free and clear of all Encumbrances.

10.     The Sale of the Purchased Assets is not subject to avoidance by any person or for any reason whatsoever, including, without limitation, pursuant to section 363(n) of the Bankruptcy Code and the Buyer shall not be subject to damages, including any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

11.     Upon closing of the Sale, the cash proceeds of the Sale shall be used to make distributions pursuant to order of the Court.

12.     The Buyer, to the extent provided by this Sale Order or the Purchase Agreement, shall be authorized, subject to compliance with applicable federal, state, and local governmental agency requirements, as of the Closing Date, to operate under any license, permit,

18

registration, and governmental authorization or approval of the Debtors constituting Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date as provided by this Sale Order and the Purchase Agreement.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

13.    All entities that are presently, or on the Closing may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Buyer pursuant to this Sale Order and the Purchase Agreement are hereby directed to surrender possession of the Purchased Assets to the Buyer on the Closing Date.

14.    Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Encumbrances that the person or entity has with respect to the Purchased Assets, or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered

or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against or in the Purchased Assets of any kind or nature; provided that, notwithstanding anything in this Sale Order or the Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  For the avoidance of doubt, upon consummation of the Sale, the Buyer is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Encumbrance that is extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code.

15.    Except to the extent included in Assumed Liabilities, or to enforce the Purchase Agreement, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to contracts and leases, customers, employees and former employees, dealers and sale representatives, and trade or other creditors holding Encumbrances against or in the Debtors and their respective bankruptcy estates or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the transfer of the Purchased Assets to the Buyer, or any entities or individuals asserting any interests in the Purchased Assets, hereby are forever barred and estopped from asserting any Encumbrances against the Buyer, the permitted successors and assigns of the Buyer, the property of the Buyer or its permitted successors and assigns, or the Purchased Assets conveyed in accordance with the Purchase Agreement.

16.    As of and after the Closing:  (a) each of the Debtors' creditors is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release its Encumbrances in the Purchased Assets (if any) as such Encumbrances may have been recorded or may otherwise exist; and (b) any Purchased Asset that may be subject to a statutory lien, mechanic's lien or the like shall be turned over and such liens shall attach to the proceeds of the Sale in the same priority they currently enjoy with respect to the Purchased Assets.

17.    The Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets, including, but not limited to, any liability for any liabilities whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business, which may become due or owing (a) prior to the Closing Date, or (b) from and after the Closing Date but which arise out of or relate to any act, omission, circumstances, breach, default, or other event occurring prior to the Closing Date.

18.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, trademark, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

19.    Subject to the terms, conditions, and provisions of this Sale Order, all entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (a) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in

accordance with the terms of the Purchase Agreement and this Sale Order, and (b) with the ability

of the Buyer to acquire, take possession of, use and operate the Purchased Assets in accordance

with the terms of the Purchase Agreement and this Sale Order.

### Contracts to be Assumed and Assigned

20.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and

subject to and conditioned upon the occurrence of the Closing Date, the Debtors' assumption and

assignment to the Buyer, and the Buyer's assumption, on the terms set forth in this Sale Order and

the Purchase Agreement, of the Assigned Contracts, are hereby approved in their entirety, and the

requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed

satisfied.

21.     The Debtors are hereby authorized in accordance with sections 105(a), 363,

and 365 of the Bankruptcy Code to assume and assign to the Buyer, effective upon the Closing

Date, the Assigned Contracts free and clear of all Encumbrances and execute and deliver to the

Buyer such documents or other instruments as may be necessary to assign and transfer the

Assigned Contracts to the Buyer.

22.     Upon the Closing, in accordance with sections 363 and 365 of the

Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest in

and of each Assigned Contract.

23.     The Assigned Contracts shall be transferred to, and remain in full force and

effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any

provision in any such Assigned Contract (including those of the type described in

sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such

assignment or transfer.

24.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer shall pay to the respective counterparty the Cure Amounts relating to any Assigned Contract, which Cure Amounts shall not exceed the amount for each Cure Amounts set forth in Schedule 2.3(b)(i) of the Purchase Agreement.

25.     Except with respect to any Pending Assigned Contract or as otherwise agreed in writing between the Debtors and the Non-Debtor Counterparties to the Assigned Contracts or stated on the record of the Sale Hearing, the Cure Amounts to be paid by the Buyer for the Assigned Contracts are hereby fixed at the amounts set forth in the Assumption and Assignment Notice and the Non-Debtor Counterparties to such Assigned Contracts are forever bound by such Cure Amounts and, upon payment of such Cure Amounts, are hereby forever barred and prohibited from taking any action against the Debtors and their respective bankruptcy estates, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, or the Purchased Assets with respect to any claim for cure under any Assigned Contract.

26.     The Buyer shall have no liability arising or accruing under the Assigned Contracts on or prior to the Closing, except as otherwise expressly provided in the Purchase Agreement or this Sale Order. Unless as otherwise set forth in this Sale Order or the Purchase Agreement, the Non-Debtor Counterparties to the Assigned Contracts are barred from asserting against the Debtors, their estates, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or occurring before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Assigned Contracts arising or incurred prior to the Closing, other than the Cure Amount set forth in the Assumption and Assignment Notice or such other Cure Amount as agreed to by the Debtors (with the consent of the Buyer) or as determined by the Court.

27.     The payment of the applicable Cure Amounts (if any) shall effect a cure of all defaults existing as of the date that such executory contracts or unexpired leases are assumed and compensate for any actual pecuniary loss to such Non-Debtor Counterparty resulting from such default.

28.     To the extent a Non-Debtor Counterparty to an Assigned Contract failed to timely object to a Cure Amount in accordance with the Scheduling Order, such Cure Amount shall be deemed to be finally determined and any such Non-Debtor Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assigned Contract to which it relates.  The Cure Amounts with respect to any Pending Assigned Contract shall be determined, fixed and paid in accordance with Sections 2.3, 2.6 and 3.3 of the Purchase Agreement and the Debtors, the Buyer and any Non-Debtor Counterparty shall be authorized to mutually agree upon a resolution of any pending disputes that does not impose any liability on, or otherwise adversely affect, the Debtors without any further notice to or action, order or approval of the Bankruptcy Court.

29.     The Buyer shall have assumed the Assigned Contracts, and pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assigned Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts, neither the Debtors and their respective bankruptcy estates nor the Buyer shall have any further liabilities to the Non-Debtor Counterparties to the Assigned Contracts, other than the Buyer's obligations under the Assigned Contracts that accrue after the date that such Assigned Contracts are assumed.

30.     Any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate,

recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts have been satisfied.

31.    Any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

32.    If following the service of the Assumption and Assignment Notices, the Buyer elects to designate additional Contracts as Assigned Contracts ("Additional Assigned Contracts") in accordance with the terms of the Purchase Agreement and this Order, the Debtors shall file with the Court and serve by first-class mail additional notice(s) (each, an "Additional Assumption and Assignment Notice") on each Non-Debtor Counterparty to the Additional Assigned Contracts. Such Additional Assumption and Assignment Notice shall (a) identify the Non-Debtor Counterparty to each Additional Assigned Contract; (b) identify the Buyer as the proposed assignee; (c) set forth the Cure Amount with respect to such Additional Assigned Contracts; and (iv) identify the effective date of the assumption and assignment for each such Additional Assigned Contract. The Non-Debtor Counterparty will have seven days following delivery of an Additional Assumption and Assignment Notice to file and duly serve an objection (if any) to the proposed assumption and assignment as set forth in the Additional Assumption and Assignment Notice. If any such objection is filed, the parties shall attempt to resolve the dispute and, if the parties are unable to reach a resolution, the matter may be set for hearing and resolution

by the Court.  If no objection to such Additional Assumption and Assignment Notice is timely filed, (i) such Additional Assigned Contracts shall be assumed by the Debtors and assigned to the Buyer effective as of the date set forth on such Additional Assumption and Assignment Notice and (ii) the Cure Amount to be paid by the Buyer with respect to any Additional Assigned Contract shall be fixed at the amount set forth in such Additional Assumption and Assignment Notice and the counterparty to such Additional Assigned Contract shall be forever bound by such Cure Amount and, upon payment of such Cure Amount, shall be forever barred from taking any action against the Debtors and their respective bankruptcy estates, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, or the Purchased Assets with respect to any claim for cure under such Additional Assigned Contract.

33.     Up and until two (2) Business Days prior to the Closing Date, Buyer may, in its sole discretion, add or remove any Contract listed on the Assumption and Assignment Notice as an Assigned Contract to be assumed and assigned to Buyer or its designee on the Closing Date in accordance with Section 2.6 of the Purchase Agreement.  The Buyer may remove any such Contracts by providing written notice thereof to the Debtors for such Contract to be removed from the Closing Assumed Contract List (as defined in the Purchase Agreement).  The Buyer may add any such Contract as an Additional Assigned Contract by providing written notice thereof to the Debtors, following which the Debtors shall file and serve an Additional Assumption and Assignment Notice in accordance with paragraph 32 hereof. For the avoidance of doubt, any Contract removed by Buyer from the Closing Assumed Contract List prior to the Closing shall, in accordance with paragraph 34 of this Order, remain subject to assumption and assignment (unless

Buyer designates such Contract for exclusion and rejection)[4] until expiration of the Designation

Deadline, and shall not constitute an Assigned Contract unless Buyer designates such Contract for

assumption and assignment after the Closing.

34.     As to each Contract that is neither designated as an Assigned Contract nor

excluded and rejected as of the Closing Date, at any time until the expiration of the Designation

Deadline, in accordance with the terms of Section 2.6(c) of the Purchase Agreement, Buyer may,

in its sole and absolute discretion, designate such Contract as an Assigned Contract by providing

written notice to the Debtors, specifying the Contract to be assumed by the Debtors and assigned

to Buyer.  Upon delivery of a notification by Buyer with respect to any such Contract to be

designated for assumption and assignment, the Debtors shall file and serve an Additional

Assumption and Assignment Notice in accordance with paragraph 32 hereof within two (2) days

of receipt of such notice to assign such Contract to Buyer and shall assume and assign to, and

Buyer shall accept the assignment of and assume such Contract. Unless and until Buyer accepts

the designation of such Contract, Buyer shall not be obligated to perform or cause to be performed

the Debtors' obligations under such Contract, and shall not retain any liabilities thereunder.

35.     The Buyer shall be deemed to be substituted for the Debtors as a party to

the applicable Assigned Contracts, and the Debtors and their respective bankruptcy estates shall

be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under

the Assigned Contracts.

36.     This Sale Order shall forever bar and prohibit any party to a Contract that

has been rejected by the Debtors that in any way relates to the Purchased Assets from taking any

---

[4]     For the avoidance of doubt, the rejection of any executory contract or unexpired lease shall be subject to Court
approval pursuant to section 365(a) of the Bankruptcy Code.

action against the Buyer in connection with the Sale, whether pursuant to the Bankruptcy Code or any other statutory or non-statutory federal, state, or local law.

37.     The Buyer has provided adequate assurance of future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

38.     There shall be no assignment fees, increases, rent-acceleration, or any other fees charged to the Buyer or the Debtors and their respective bankruptcy estates as a result of the assumption and assignment of the Assigned Contracts.

39.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and prohibited from raising or asserting against the Debtors and their respective bankruptcy estates or the Buyer any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assumed or arising by reason of the Closing.

40.     Neither the Buyer nor any permitted successor or assign of the Buyer shall be responsible for or be subject to any Encumbrances or obligations arising out of any of the contracts, agreements, or understandings that are not Assigned Contracts after the Closing Date.

### Additional Provisions

41.     The Debtors and the Buyer hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

42.     Following the Closing, no holder of an Encumbrance in or against the Debtors and their respective bankruptcy estates or the Purchased Assets shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to such

Encumbrance or any actions that the Debtors and their respective bankruptcy estates may take in these Chapter 11 Cases or any successor bankruptcy case.

43.    The Debtors, including their respective officers, employees and agents, are hereby authorized and directed to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Purchase Agreement and this Sale Order.  The Debtors shall be, and hereby are, authorized and directed to take all such actions as may be necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order.

44.    The Sale is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts by the Buyer, if any, and the sale free and clear of all Encumbrances), unless such authorization and consummation of such Sale are duly stayed pending such appeal.  The Buyer is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such is entitled to the full benefits and protections of such section.

45.    As a good-faith purchaser of the Purchased Assets, the Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets, and therefore the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

46.    Notwithstanding any provision to the contrary in the Sale Motion, this Order, the Purchase Agreement, and/or related sale documents ("Sale Documents"), nothing in the Sale Documents shall: (1) release, nullify, preclude or enjoin the enforcement of any police or

regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order; (2) authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law; (3) authorize the assumption, sale, assignment or other transfer to the Buyer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, (v) leases, or (vi) agreements, (collectively, "Federal Interests") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (4) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (5) affect the government's rights to offset or recoup any amounts due under, or relating to, the Federal Interests; or (6) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the extent set forth in 28 U.S.C. Section 1334 (as limited by any other provisions of the United States Code).  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

47.    Without limiting the foregoing and for the avoidance of doubt, no provision in the Sale Documents relieves any person from the rules, regulations, and orders promulgated by the Federal Aviation Administration ("FAA").  Any license, certificate, and/or authorization issued by the FAA to any Debtor may not be transferred to or held by any entity without the FAA's approval pursuant to applicable FAA regulations.  Specifically, in the event that the Buyer does not meet the U.S. citizenship requirements set forth in in 14 C.F.R. § 47.65, Debtor Eclipse Aerospace, Inc. may not continue to hold its Dealer's Aircraft Registration Certificate unless it

obtains from FAA an exemption from such U.S. citizenship requirements.  The FAA's rights and powers to take any action pursuant to its regulatory authority are fully preserved and nothing herein shall proscribe or constrain the FAA's exercise of such power or authority.

48.    Moreover, no provision in the Sale Documents relieves any Debtor holding any license and/or authorization (a "Regulated Entity") issued and/or regulated by the Federal Communications Commission ("FCC") or reorganized Regulated Entity from its obligation to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the FCC.  No transfer of any FCC license or authorization held by a Regulated Entity or transfer of control of a Regulated Entity, or transfer of control of a FCC licensee controlled by a Regulated Entity shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

49.    The Debtors are authorized to pay from the proceeds of the sale of the Purchased Assets approved by this Sale Order:   (a) $123,717.80 in outstanding actual and documented fees and expenses owing to the Prepetition First Lien Agent; and (b) $43,371.70 in outstanding actual documented fees and expenses owing to Crystal.

50.    As set forth in the record of the hearing held before the Court on September 3, 2020, the Confirmation Order [Docket No. 707] is null and void.

51.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in these Chapter 11 Cases, any subsequent chapter 7 or chapter 11 cases

of the Debtors, or any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the terms of this Sale Order or the Purchase Agreement.

52.    The failure specifically to include any particular provisions of the Purchase Agreement including any of the Ancillary Documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the Purchase Agreement and each document, agreement or instrument be authorized and approved in its entirety.

53.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

54.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall govern.

55.    To the extent there are any inconsistencies between the terms of this Sale Order and the Purchase Agreement (including all Ancillary Documents executed in connection therewith), the terms of this Sale Order shall govern.

56.    To the extent that such modification, amendment or supplement does not have a material adverse effect on the Debtors, the Purchase Agreement and any related agreements, documents or other instruments may be so modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

57.    The provisions of this Sale Order are nonseverable and mutually dependent.

58.    Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14)

day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

59.    This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

**Dated: November 20th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**